UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEGGY L. DOORNBOS,

        Plaintiff,

v.

        Case No. 1:13-cv-595
        Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on October 26, 1967 (AR 353).[1] She alleged a disability onset date of July 21, 2005, when she slipped and fell on her coccyx while at work (AR 303, 362, 454). Plaintiff stated that she earned an associate's degree in stenography, obtained a real estate license, and "went to school to learn how to do nails" (AR 46, 314). She had past work as a general laborer, a manager of a fast food restaurant, a manager of a restaurant, a medical transcriptionist, a court stenographer, and a pin polisher for a jewelry manufacturer (AR 46-47, 304). Plaintiff identified her disabling condition as coccydynia (AR 303).[2]

Plaintiff's claim was originally denied in a decision by Administrative Law Judge

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Coccydinia (also known as coccygodynia) is defined as "pain in the coccyx and neighboring region." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 347.

(ALJ) William G. Reamon dated October 28, 2010 (AR 148-61). ALJ Reamon's decision was remanded by the Appeals Council for further evaluation of the evidence (AR 13). On remand, ALJ Donna J. Grit reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 10, 2012 (AR 13-31).[3] This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that

---

[3] In her decision, ALJ Grit relied on the record developed by ALJ Reamon, stating:

> The evidence considered in the earlier decision includes Exhibits 1A through 39F. Additional medical evidence has been submitted which has been entered into the record as Exhibits 3A-4A; 12B-19B; 9D-14D; 12E-20E; and 39-57F. The undersigned hereby adopts the summarization of the medical evidence considered in the earlier decision, but not the conclusions resulting therefrom.

(AR 13).

the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 21, 2005 through her last insured date of December 31, 2010 (AR 15). Second, the ALJ found that through the date last insured, plaintiff had severe impairments of: coccydynia and pelvic floor myalgia; affective disorder; attention deficit hyperactivity disorder (ADHD); history of drug and alcohol abuse; and iron deficiency anemia (AR 15). At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). Specifically, plaintiff did not meet the requirements of Listings 12.02 (organic mental disorders), 12.04 (affective disorders), or 12.09 (substance addiction disorders) (AR 16-17).

The ALJ decided at the fourth step that:

[T]hrough December 31, 2010, the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) involving lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walking 2 hours of an 8-hour workday and sitting 6 hours of an 8-hour workday with the option to sit and/or stand allowing for changing positions from sitting to standing and standing to sitting at least every 30 minutes; less than frequent climbing of ramps and stairs, but no climbing of ladders, ropes or scaffolds; less than frequent balancing, stooping, kneeling, crouching and crawling; avoid concentrated exposure to extremes of cold; no exposure to vibration; can understand, remember and perform simple tasks, make simple work-related decisions; can work

>   independently and interact with public, coworkers, and supervisors, but can only
>   adjust to changes in work environment or expectations on a less than frequent basis
>   (SSR 96-8p).

(AR 17). The ALJ also found that through her date last insured, plaintiff was unable to perform her any past relevant work (AR 29).

At the fifth step, the ALJ determined that through the date last insured plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 29-30). Specifically, plaintiff could perform the following light, unskilled work in the regional economy: assembler (1,500 jobs); inspector (2,000 jobs); and bench assembler (2,000 jobs) (AR 30).[4] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 21, 2005 (the alleged onset date) through December 31, 2010 (the date last insured) (AR 30).

### III. ANALYSIS

Plaintiff raised six issues (with several sub-issues) on appeal.

#### A.  ALJ Grit gave no valid reasons for rejecting plaintiff's reported symptoms and limitations.

Plaintiff contends that the ALJ Grit improperly evaluated her credibility and gave no valid reasons for rejecting plaintiff's reported symptoms and limitations.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate

---

[4] While the ALJ's decision did not name the region at issue, the vocational expert defined the region as the State of Michigan (AR 83-87).

their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ addressed plaintiff's credibility as follows:

> After careful consideration of the evidence, I note the claimant testified she cannot concentrate, but she rattled non-stop at the hearing. She knew very specific details of physical therapy treatment modalities, conversations with physicians, medications, etc. If she has memory and concentration problems, they are certainly not noted and not work preclusive. I asked her if she tried to get a residual functional capacity from her current treater, Dr. PreFontaine and she indicated he declined to do so saying she should obtain it from another source. She indeed tried to obtain it from Dr. Gianturco, who also declined (Exhibit 49F). While I do not doubt that the claimant experiences some difficulties as a result of her severe impairments, her statements concerning the impact of the impairments on her ability to work are not entirely credible in light of the medical history, the degree of medical treatment required, noncompliance with medication, questionable drug-seeking behavior by changing physicians, objective diagnostic findings that do not substantiate the degree of pain she alleges, records of the treating physicians at Allendale Family Practice whose office visit diagnoses are primarily based on the claimant's own reports, and examining practitioners who do not offer limitations that disable her (SSR 96-7p).

(AR 28-29).

Plaintiff seeks reversal based on several grounds. As an initial matter, plaintiff

contends that ALJ Grit gave vague reasons for her credibility findings. This is a general objection which the Court will consider with respect to each specific objection.

Plaintiff contends that the ALJ engaged in "improper doctor playing" by considering her demeanor at the hearing, i.e., the ALJ's statements that contrary to her claim of suffering from disabling impairments of memory and concentration, plaintiff "rattled non-stop at the hearing" and "knew very specific details of physical therapy treatment modalities, conversations with physicians, medications, etc." (AR 28). An ALJ's is required to observe a claimant's demeanor at the hearing. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, *particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility*." *Walters*, 127 F.3d at 531 (emphasis added). Plaintiff suggests that the ALJ engaged in the "sit and squirm" test, citing *See Martin v. Secretary of Health and Human Services*, 735 F.2d 1008, 1010 (6th Cir. 1984) ("[W]e cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited 'sit and squirm' test"). The sit and squirm test does not apply in this case because plaintiff's claims involved conditions other than disabling pain and the ALJ did not dismiss plaintiff's claim solely on her observations of plaintiff at the hearing. *See Martin*, 735 F.2d at 1010. Accordingly, this claim of error will be denied.

Plaintiff contends that the ALJ improperly considered plaintiff's unsuccessful attempts to obtain disability opinions from two doctors. In her decision, the ALJ discussed this issue:

> She also asked Drs. PreFontaine and Dr. Gianturco to complete a form for permanent disability (Exhibit 49F). Dr. Gianturco refused (Exhibit 49F, page 22) and at the hearing, the claimant testified that Dr. PreFontaine told her to find another source.

(AR 28). The fact that two treating physicians declined to give plaintiff opinions regarding the existence of alleged disabling medical conditions raises an issue of plaintiff's credibility. Dr. Gianturco's treatment notes from December 19, 2011 (AR 1074) are illuminating on this subject and were fairly summarized by the ALJ as follows:

> [R]ecords dated December 19, 2011 from Michelle Gianturco, D.O., at Spectrum Health indicates the claimant was being seen for the first time. She wanted a form for permanent disability and said Dr. Gianturco could answer the questions on the form, off past form completed by Dr. Lemke at another office. She brought out the form as Dr. Gianturco was leaving the room, after [s]he had been in the room for 45 minutes. Dr. Gianturco indicated she could not complete the form, was not comfortable going off previous notes and was "not comfortable treating this patient." She referred claimant to a pain physician. Dr. Gianturco indicated she would not write a prescription for MS Contin. The claimant had a prescription for MS Contin, which was not due to be refilled until December 21, 2011. Dr. Gianturco noted the claimant appeared distressed, moved slowly and changed her position because she was uncomfortable. However, her speech and behavior were normal. She did not appear anxious or depressed (Exhibit 49F, pages 22-24).

(AR 21). Plaintiff's attempt (1) to have a new doctor complete a form in support of a claim for permanent disability based on a different doctor's opinion, and (2) to have the new doctor supply her with narcotics on demand, support the ALJ's finding that plaintiff lacked credibility. Based on this record, the Court finds no error in the ALJ's observation that plaintiff lacked credibility due to her opinion shopping among doctors.

Plaintiff also contends that the ALJ improperly considered plaintiff's drug seeking behavior. Plaintiff's contention is without merit. Courts have held that drug seeking behavior can form a basis for rejecting a claimant's testimony regarding pain and limitations. *See, e.g., Massey v. Commissioner Social Security Administration*, 400 Fed.Appx. 192, 194 (9th Cir. 2010) ("the ALJ's interpretation that [the claimant] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony"); *Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir.

8

2009) ("there is sufficient evidence in the record to support the ALJ's determination that [the claimant's] credibility about her pain and limitations was compromised by her drug-seeking behavior"); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (the claimant's credibility undermined where he received a regimen of pain medication from two different doctors); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("[a] claimant's misuse of medications is a valid factor in an ALJ's credibility determinations"). This claim of error will be denied.

Finally, plaintiff contends that the ALJ improperly discounted her credibility due to lack of objective diagnostic findings. While the ALJ set forth a detailed summary of plaintiff's medical history (AR 18-28), the Court agrees with plaintiff that the ALJ's decision did not support her finding that plaintiff's "statements concerning the impact of the impairments on her ability to work are not entirely credible in light of . . . objective diagnostic findings that do not substantiate the degree of pain she alleges." Specifically, the ALJ did not articulate which of plaintiff's diagnostic tests failed to substantiate her claim of disabling pain.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199 (6th Cir. 2010), an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the Court cannot

follow the ALJ's reasoning as to how the objective diagnostic findings do not substantiate the degree of pain plaintiff alleged (AR 29). Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility with respect to the ALJ's finding that the objective diagnostic findings did not substantiate the degree of pain alleged by plaintiff.

> **B. ALJ Grit gave no valid reason for rejecting treating AMS [acceptable medical source] Lippert's opinions.**

Plaintiff contends that the ALJ erroneously rejected the opinion of plaintiff's treating physician, J'Aimee Lippert, D.O., because "the doctor did not opine on the full range of potential limitations." Plaintiff's Brief at p. 11. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a

claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ summarized plaintiff's treatment history with Dr. Lippert as follows:

> J'Amiee Lippert, D. O. is the claimant's specialist in family medicine and surgeon who performed sacral coccygeal compression surgery on February 2, 2006 (Exhibit 8F, page 10). Dr. Lippert's initial diagnosis includes pelvic floor pain, coccydynia, lumbago, and somatic dysfunction of the lumbosacral spine, pelvis and sacrum. She indicates on December 8, 2005 that she performed an initial evaluation of the claimant on October 14, 2005 when she found the claimant to have somatic dysfunction, a finding consistent with the claimant's injury and with the mechanism of injury. Dr. Lippert recommended osteopathic manipulation and made further referrals for care by a number of specialists. She felt the claimant was quite motivated to return to work. (Exhibit 7F, page 2).

(AR 24).

Dr. Lippert gave her opinion regarding plaintiff's condition in a deposition, which the ALJ summarized as follows:

> In a deposition of February 1, 2007, Dr. Lippert continued to advocate for a multi-faceted approach to returning to work that employs different practitioners and specialists to address the different needs of an individual because she felt results are better with a network of support and intervention. She further opined that if the claimant were to receive this kind of care, the claimant could return to work, but would need the ability to change position frequently as the claimant has difficult time even maintaining one position for an appointment lasting an hour and a half; the claimant required ability to stand, walk and even recline at her determination, if it was appropriate; limited stair climbing; no squatting or anything that would cause

11

> increased stress and strain on the pelvic floor musculature during her rehabilitation period; ability to self-monitor and gauge on her own how well she was feeling and how functional she was; limited hours; frequent breaks; and the ability to change positions. The ability to lift would need to be limited and further testing would be required to determine the weight limit. She indicated the claimant also had fascial strain along with the diagnosis of pelvic floor pain, coccydynia, lumbago, and somatic dysfunction of the lumbar spine, pelvis and sacrum (Exhibit 15F).

(AR 25).

After reviewing Dr. Lippert's opinion, the ALJ declined to give it controlling or even great weight:

> Dr. Lippert apparently was unable to determine a weight limit for lifting and carrying. She did not provide specifics [sic] limitations for sitting or for what she meant by limited hours. Therefore, an assessment of what she believes the residual functional capacity should be is completely unclear. While careful consideration has been given the reports of Dr. Lippert, great weight is not assigned to her opinion because even with over a 2-year history of treating the claimant she was unable to assess what the claimant can still do despite her impairments and what the specific limitations are with respect to basic work activities.

(AR 25).

Based on this record, the ALJ did not give good reasons for the weight assigned to Dr. Lippert's opinions. At her deposition, the doctor stated a number restrictions (AR 632-33). When asked "[w]hat about lifting limits?", Dr. Lippert replied:

> Her ability to lift, because lifting anything of any substantial weight also increases the pressure within the abdomen and pelvis, therefore increasing the pressure on the pelvic floor and coccyx, would need to be limited and I would need to do some specific testing and monitoring and even have her physical therapist do some special testing to determine that weight limit, but it would be limited.

(AR 633).

The record reflects that Dr. Lippert gave a reasonable explanation for her reluctance to place a specific lifting restriction on plaintiff. In light of the doctor's testimony, the ALJ did not give good reasons for giving Dr. Lippert's entire opinion something less than "great weight."

However, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Wilson*, 378 F.3d at 546-47. As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Here, plaintiff met that burden, by noting that the RFC did not include Dr. Lippert's opinion which restricted plaintiff from squatting (AR 633). Plaintiff's Brief at pp. 11-12. Accordingly, this matter will be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Lippert's opinion with respect to the squatting restriction.

### C. ALJ Grit gave no valid reason for rejecting treating AMS Lemke's opinions.

Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Lemke, because his opinion was not supported by diagnostic evidence. The ALJ addressed Dr. Lemke's opinions as follows:

> John Lemke, D.O., is also with Allendale Family Practice (AFP), where the claimant indicates she has been seen treated since 1992 for exams, medications and referrals (Exhibit 1E, page 5). As noted above, [Nurse Practitioner Julie Brubaker] and Dr. Lemke's records indicate referral to Javery Pain Institute, PC. The claimant was seen by Dr. Javery, D.O., on November 13, 2009, and he provided Dr. Lemke with the following examination findings. The claimant had pain that was a 7 on a scale of 1-10. She complained of increased pain with prolonged sitting, standing, walking, bending, lifting, squatting and climbing stairs. Pain is alleviated with pain medication, rest, and sitting in a hot tub. The claimant denied joint swelling, limitation of motion, muscle cramps, back pain, back spasms, painful joints, stiffness, leg cramps, head pain, neck pain, shoulder pain or hip pain. Dr. Javery indicated the claimant's lumbosacral spine showed no abnormalities and paraspinal musculature was nontender to palpation; she had normal range of motion of the spine; normal muscle strength, and normal gait and station and able to stand without difficulty. Straight leg raising was normal; range of motion of right and left upper and lower extremities was normal, but she had severe tenderness and pain with palpation over the coccyx with any type of attempted manipulation, but no evidence

of instability was present. Muscle strength and tone were within normal limits in pelvic musculature. Motor, reflexes and sensation were also normal. The plan was to schedule the claimant for a *ganglio impar* injection with sedation at the next visit. Dr. Javery further noted the claimant's was cognitively intact, mood was normal with appropriate affect, thought processes were normal (Exhibit 29F, page 9-10).

On December 14, 2009, Dr. Lemke completed a lumbar spine residual functional capacity questionnaire indicating the claimant can lift and carry up to 10 pounds rarely; sit for 5-10 minutes at a time for a total of less than 2 hours of an 8-hour workday; stand/walk for 15-20 minutes at one time and for a total of less than 2 hours of an 8-hour workday; would need unscheduled breaks and before returning to work may need to lie down to rest as needed; would likely be absent from work more than 4 days per month (Exhibit 28F).

It is noted that while Dr. Javery's findings were sent to Dr. Lemke, as shown on the report, the opinion of Dr. Lemke (written after the report of Dr. Javery) regarding the claimant's residual functional capacity does not appear to reflect the physical findings of Dr. Javery. Moreover, Dr. Lemke does not indicate supporting evidence in the form of diagnostic testing, x-rays, MRls, or computed axial tomography scans that reflect the very limited residual functional capacity he offers.

(AR 25-26)(emphasis in original).

Dr. Lemke's opinion regarding the nature and severity of plaintiff's impairment must be given controlling weight if the ALJ found that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. Contrary to the ALJ's decision, Dr. Lemke's December 14, 2009 opinion included some physical findings in support of his RFC determination. When asked to identify "the clinical findings, laboratory and test results that show your patient's medical impairments," Dr. Lemke listed "pain to palpation over coccyx, multiple specialist referrals" (AR 806). Given this response, the ALJ should have addressed these findings. This matter will be remanded pursuant to sentence four of 42 U.S.C. § 405(g), and the Commissioner should re-evaluate Dr. Lemke's opinions expressed in his December 14, 2009 RFC questionnaire.

14

> **D.    ALJ Grit gave invalid reasons for rejecting the opinions of the treating OMSes [other medical sources]**

Plaintiff contends that the ALJ improperly rejected the opinions of a treating nurse practitioner, NP Brubaker, because those opinions were contradicted by the opinions of examining physicians. The ALJ addressed NP Brubaker's opinions as follows:

> In assigning weight to the reports of Julie Brubaker, family nurse practitioner at AFP, I must be guided by 20 CFR 404.1513(a), Acceptable Medical Sources, who are licensed physicians, licensed or certified psychologists or school psychologists. While her report was given consideration, guidance must be sought under 20 CFR 404.1513(d), Other Sources, which include, but not limited to, nurse-practitioners. While she indeed has a longitudinal history with the claimant, her reports cannot be given greater weight than that given to Acceptable Medical Sources. In this instance, the reports of J. Wessinger, M.D., and Randolph B. Russo, M. D., are specialists in their fields who offered clinical and/or diagnostic evidence in support of their findings such as MRI and nuclear medicine bone scan of the lumbosacral spine and pelvis (Exhibit 34F). This supporting evidence (bone scan of November 3, 2005 and MRI of July 29, 2005) together with clinical findings show no abnormalities and no evidence of sacral fractures or abnormal tracer uptake (Exhibit 11F, page 56; 13F, page 11; 34F, pages 2-4; 8-13). However, a review of all of AFP records, from both Ms. Brubaker and Dr. Lemke, shows no diagnostic tests other than blood work (Exhibits 17F, 26F, 29F, 30F, 33F, 48F). Thus, while the reports of Drs. Wessinger [sic] and Dr. Russo are based on one-time appointments, greater weight has been accorded to their reports for the above-noted reasons and lesser weight to the opinion of Ms. Brubaker and Dr. Lemke, whose treatment of the claimant appear to be based only on blood work and the claimant's own complaints.

(AR 26).

The ALJ could properly discount NP Brubaker's opinions because she was not an acceptable medical source under 20 C.F.R. § 404.1513. While NP Brubaker's opinions can be considered as evidence from an "other" medical source, they are not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 404.1513(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See also, Shontos v. Barnhart*,

15

328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)).  Accordingly, this claim of error will be denied.

While plaintiff suggests that the ALJ should have performed a more thorough review of NP Brubaker's opinions pursuant to Social Security Ruling (SSR) 06-3p, she presents no argument of substance on this issue.  Plaintiff's Brief at pp. 13-14.  Similarly, while plaintiff cryptically mentioned that the ALJ improperly rejected the opinions of a physical therapist Vandevegte and NP Kwast (neither of whom are acceptable medical sources), she does not support these claims with any argument of substance.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems these arguments waived.

### E. ALJ Grit gave no reason for rejecting examiner Lazzara's opinions.

Plaintiff contends that the ALJ committed reversible error by only briefly mentioning the consultative report of R. Scott Lazzara, M.D., and ignoring a portion of that report without offering any reason.  Plaintiff's Brief at p. 14.  Contrary to plaintiff's claim, the ALJ did not "briefly" mention Dr. Lazzara's report.  The record reflects that the ALJ addressed Dr. Lazzara's opinion twice.  First, the ALJ summarized Dr. Lazzara's findings:

> R. Scott Lazzara, M. D., internal medicine specialist, examined the claimant at the request of the Disability Determination Service on January 17, 2012.  The claimant complained of coccydynia for 7 years.  She is now on pain management and prescribed Morphine 60 mg two tabs in the morning, one at noon, and two at bed.  She takes Zanaflex 6 mg twice a day and Cymbalta 120 mg and uses a TENS unit.

> She complained of diffuse sacral and pelvic pain that radiates into left leg more than right.  She reported being able do her activities of daily living, but has difficulty putting on shoes and socks.  She can drive, occasionally does household chores, spends most of time watching TV; and intercourse is difficult because of pain.  She reported being able to sit one hour, stand 30 minutes, walk a block, and lift 10 pounds. Mental Status appeared normal. The musculoskeletal examination reflected no evidence of joint laxity, crepitance, or effusion.  Grip strength remains intact.  Dexterity was unimpaired.  The patient could pick up a coin, button clothing and open a door.  The patient had mild difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty squatting, and was unable to hop.  There was diffuse tenderness in the sacral and coccygeal areas that was more pronounced on the left than the right.  There was pain in her back with straight leg raising at 60° bilaterally that was non-radiating.  The neurological examination showed intact cranial nerves; motor strength was 4/5 in both lower extremities; and sensory examination was intact to light touch and pinprick.  Reflexes are 2+ and symmetrical.  The patient walked with a guarded wide-based gait without the use of an assist device.  In his diagnosis, Dr. Lazzara indicated the chart showed normal imaging studies.  Her condition appeared to be mostly myofascial and ligamentous.  She did have some subtle weakness in her lower extremities and could have suffered an underlying cauda equina syndrome.  She did not have any neuropathy however.  Her reflexes were stable.  The doctor recommended continued conservative management.  At this point, a spinal stimulator or infusion pump therapy may be helpful.  Her upper extremities were stable.  Her pain did not appear to be psychosomatic.  The doctor opined the degree of impairment appeared mild to moderate.  Her prognosis appears fair to guarded and permanent (Exhibit 40F).

(AR 19).

The ALJ further addressed Dr. Lazzara's opinion as an example of a recent evaluation:

> Therefore, while the record indicates the claimant has continued to treat, I find good and sound reasons were given in the prior decision for relying on the opinions of the orthopedic specialist consultative evaluations. Up-to-date physical exams have not really changed despite continued treatment.  Even at the recent consultative evaluation by Dr. Lazzara on January 17, 2012 (Exhibit 40F), the claimant is noted to have *mild to moderate challenges with orthopedic maneuvers*.  While it is recognized that there has been continued treatment, there is no convincing evidence that it has changed the overall picture to any great extent even beyond the date last insured of December 31, 2010.  Therefore, while the Workmen's Compensation independent medical evaluations are not the most recent examination, dating back to November 2005 and August 2006, they still offer reliable and objective clinical findings and diagnostic testing of the lumbosacral spine and pelvis,

17

which reflected no abnormalities.

(AR 28) (emphasis in original).

Plaintiff points out that the ALJ did not address Dr. Lazzara's "medical source statement of ability to do work-related activities (physical)" which was attached to the doctor's report (AR 971-76). However, this is not an error requiring reversal. While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Nor is the ALJ required to discuss all evidence submitted. *See Daniels v. Commissioner of Social Security*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). Plaintiff's claim of error will be denied.

### F. ALJ Grit gave faulty reasons for crediting the employer examiners.

Finally, plaintiff contends that the ALJ improperly considered Drs. Wessinger and Russo as specialists in their fields, when she gave their opinions greater weight than the opinions expressed by Dr. Lemke and NP Brubaker. Contrary to plaintiff's contention, the record reflects that these two physicians were specialists. When he examined plaintiff in 2006, Dr. Wessinger operated a practice in orthopaedic surgery (AR 874). He was a Diplomate of the American Board of Orthopaedic Surgery, a Fellow of the American Academy of Orthopaedic Surgeons, and a Fellow of the American Back Society (AR 874). When he examined plaintiff in 2005, Dr. Russo practiced as part of the Orthopaedic Associates of Grand Rapids, P.C. (AR 880-81). Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should: (1) re-evaluate plaintiff's credibility with respect to the ALJ's finding that the objective diagnostic findings did not substantiate the degree of pain alleged by plaintiff; (2) re-evaluate Dr. Lippert's opinion with respect to the squatting restriction; and (3) re-evaluate Dr. Lemke's opinions expressed in his December 14, 2009 RFC questionnaire. A judgment consistent with this opinion will be issued forthwith.


Dated: September 29, 2014          /s/ Hugh W. Brenneman, Jr.
                                   HUGH W. BRENNEMAN, JR.
                                   United States Magistrate Judge